# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAUREN LOWE, <br><br> Defendant. | ) ) ) ) ) ) Case No. CIV-20-612-PRW ) ) ) ) ) ) |

## MOTION TO ENFORCE SUBPOENA AND TO COMPEL
## TESTIMONY AND THE PRODUCTION OF DOCUMENTS

Plaintiff, People for the Ethical Treatment of Animals, Inc. ("PETA"), for its Motion to Enforce Subpoena and to Compel Testimony and the Production of Documents by Defendant, Lauren Lowe, states as follows:

### Summary

1.  PETA is the Plaintiff in a lawsuit currently pending in the United States District Court for the Southern District of Indiana, styled *People for the Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc., Timothy L. Stark, Melisa D. Stark, and Jeff Lowe*, Case No. 4:17-CV-00186-RLY-DML (the "Indiana Lawsuit").

2.  Together with her husband, Jeff Lowe, Lauren Lowe operates a roadside zoo within the jurisdiction of the Western District of Oklahoma. Mr. and Mrs. Lowe, in willful contempt of multiple orders issued by the Southern District of Indiana, took possession of four lion cubs whose welfare is the subject of PETA's underlying Endangered Species Act litigation against a former business partner of Mr. Lowe. Since Mr. Lowe's joinder in the

1

Indiana Lawsuit as a defendant, PETA has sought limited discovery regarding these cubs, including how they came to be in Mr. and Mrs. Lowe's possession, their medical histories, the current conditions of their confinement, and Mr. and Mrs. Lowe's long-term plans for the cubs.

3. Mrs. Lowe has refused to engage in discovery. While not offering written objections to or moving to quash PETA's subpoenas, she has turned the process into unproductive theater for the purported benefit of a planned reality television program. She has generally refused to acknowledge PETA's right to ask her questions. When pressed, she has offered objections without credible basis, such as that the Health Insurance Portability and Accountability Act ("HIPAA") forbids her from disclosing basic information about the lion cubs' lives following their transport—in a pickup truck, in August heat, and within days of birth—more than 800 miles from Indiana to Oklahoma.

4. While Mrs. Lowe treats discovery as a game, evidence mounts that the information sought by PETA is of life and death concern. Published reports describe and show these lion cubs in deteriorating condition—starved, neglected, and infested with bugs, with one of the cubs missing a large chunk of an ear. PETA desperately needs the information sought from Mrs. Lowe in order to establish for the Southern District of Indiana whether Mr. and Mrs. Lowe are keeping these cubs in conditions that violate the Endangered Species Act.[1]

---

[1] Further, in another case in this District, the entity in possession of the land on which the roadside zoo operates (and where these lions now reside) is subject to a June 1, 2020 order requiring it to "take all steps reasonably necessary to require [the roadside zoo] to vacate the…premises within 120 days … [which] shall also require removal of all zoo animals…."

5. For these reasons, and those set forth below, PETA respectfully requests that this Court compel Mrs. Lowe's compliance with PETA's Subpoenas.

### Parties, Venue, and Jurisdiction

6. PETA is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code. Its headquarters is located in Norfolk, Virginia.

7. Lauren Lowe is a resident of Garvin County, Oklahoma.

8. This is an action to enforce a subpoena issued in the United States District Court for the Southern District of Indiana. This Court has jurisdiction to enforce subpoenas arising from lawsuits pending in United States district courts.

9. This Court has personal jurisdiction and venue is proper because Defendant resides within the Western District of Oklahoma.

### The Subpoenas to Mrs. Lowe

10. Lauren Lowe is the wife of Jeffrey L. Lowe, a defendant in the Indiana Lawsuit. Both Lauren and Jeff reside in Wynnewood Oklahoma where they operate the Greater Wynnewood Exotic Animal Park.

11. On May 29, 2020, PETA issued two subpoenas in the Indiana Lawsuit to Mrs. Lowe: (1) a subpoena demanding that she appear at a deposition on June 15, 2020 at 9:00 a.m. Central Time; and (2) a subpoena demanding that she produce or allow PETA to inspect various categories of documents on or before June 11, 2020 (the "Subpoenas"). *See*

---

*See* Order, *Big Cat Rescue Corp. v. Schreibvogel and Greater Wynnewood Development Group, LLC,* No. CIV-2016-155-SLP (W.D. Okla. June 1, 2020), [Doc. 152] at 9 ¶III (2).

Notice of Subpoena to Testify at a Deposition in a Civil Action and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, attached as **Exhibit 1**.

12. The Subpoenas were served on Mrs. Lowe on June 2, 2020. *See* Affidavits of Service, attached as **Exhibit 2**.

13. Mrs. Lowe did not offer written objection or move to quash the Subpoenas.

14. Mrs. Lowe has failed to comply with the Subpoenas by refusing to produce documents and refusing to answer questions during her deposition before hanging up on the remote proceedings after approximately 40 minutes.

**The Indiana Lawsuit**

15. In September 2017, PETA filed a citizen suit in the Southern District of Indiana against Defendants Wildlife in Need and Wildlife in Deed, Inc. ("WIN"), Timothy L. Stark, and Melisa D. Stark (collectively, the "WIN Defendants"). PETA's lawsuit alleges that WIN, an unaccredited roadside zoo that confines numerous species of animals, including tigers, lions, and hybrids thereof ("Big Cats"), abuses Big Cats in violation of the Endangered Species Act and its implementing regulations. Specifically, the WIN Defendants (1) declaw Big Cats in medically unnecessary procedures that amputate each digit at the third knuckle; (2) separate Big Cat cubs from their mothers at too early an age and force them into direct contact with members of the public, stunting their physical, psychological, and behavioral development; and (3) confine the Big Cats in woefully inadequate enclosures, void of adequate medical care, shelter, necessary enrichment, and

environmental enhancement, including appropriate substrates on which to walk and adequate space. The WIN Defendants' practices have killed several Big Cats.

16. In the spring of 2019, Jeff and Lauren Lowe inserted themselves into the Indiana Lawsuit. In February 2019, Mr. Lowe and Mr. Stark announced their intent to start a new roadside zoo in Thackerville, Oklahoma—intended, in part, as a refuge that would allow the WIN Defendants to escape liability against, separately, PETA and the United States Department of Agriculture ("USDA").[2]

17. As part of this scheme, the WIN Defendants transferred ownership of the Big Cats kept at WIN to Mr. Lowe. On July 25, 2019, the Southern District of Indiana clarified a prior evidence preservation order and stated that neither Mr. Lowe nor the WIN Defendants may "transfer, move, or relocate any Big Cat before this litigation comes to an end." *See* Order, *PETA v. WIN, et al.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. Jul. 25, 2029), [Doc. 239].

18. On September 8, 2019, Mr. Lowe stated on Facebook that "[on] July 17th-18th Tim [Stark] pulled five newborn lion cubs, against a Federal Court Order and asked me to claim they were born at my park." *See* Jeff Negan Lowe, Facebook (Sept. 8, 2019), attached as **Exhibit 3**. On September 13, 2019, Mr. Stark notified the Southern District of

---

[2] On February 3, 2020, the USDA permanently revoked the Animal Welfare Act Exhibitor license held by the WIN Defendants. As part of its decision, the USDA found the WIN Defendants responsible for more than 120 violations of the Animal Welfare Act. Because the WIN Defendants "willfully violated the AWA on multiple occasions," because "the gravity of such violations was great, there is a history of previous violations," and because the WIN Defendants "did not act in good faith," the USDA also assessed civil penalties of $340,000.

Indiana that four cubs had been born at WIN in Indiana and then transferred to Mr. Lowe's facility in Oklahoma. *See* Notice, *PETA v. WIN, et al.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. Sept. 13, 2019), [Doc. 260].

19.     On October 1, 2019, Mr. Lowe stated on Facebook that Mr. Stark "lied to a Federal Judge by telling the judge that I instructed him to pull lion cubs. What he didn't know is that Lauren recorded him talking about pulling the cubs and asking me to lie to the USDA. I also made sure to text Stark about him pulling cubs against a court order. Those text messages have been turned over to the Indiana [Attorney General] and the Judge in his Federal trial." *See* Jeff Negan Lowe, Facebook (Oct. 1, 2019), attached as **Exhibit 4**.

20.     As a result, the Southern District of Indiana joined Mr. Lowe as a necessary defendant on January 17, 2020. *See* Entry on Motion For Leave to Join Jeff Lowe as a Required Defendant and Motion to Join Jeff Lowe as a Required Defendant, *PETA v. WIN, et al.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. Jan. 17, 2020), [Doc. 284]. PETA filed an amended complaint joining Mr. Lowe on January 29, 2020. PETA seeks relief against Mr. Lowe for "violat[ing] and continu[ing] to violate the [Endangered Species Act] and its implementing regulations by taking certain tigers, lions, and hybrids thereof, within the meaning of the [Endangered Species Act], without a permit, that were previously owned by the WIN Defendants and that have been the subject of this litigation" and for possessing Big Cats that were unlawfully taken under the Endangered Species Act. *See* Amended Complaint, *PETA v. WIN, et al.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. Jan. 29, 2020), [Doc. 285].

21.     Mr. Lowe filed an Answer to PETA's Amended Complaint on February 25, 2020. *See* Answer, *PETA v. WIN, et al.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. Feb. 25, 2020), [Doc. 296].

22.     On March 10, 2020, the Southern District of Indiana asked all parties to confer and propose a schedule for discovery, experts, witness and exhibit lists, and dispositive motions related to the claims involving Mr. Lowe. Mr. Lowe refused to participate in this process.

23.     PETA served Interrogatories and Requests for Production on Mr. Lowe on April 1, 2020. Mr. Lowe did not respond within the required 30 days. In later emails, Mr. Lowe contradicted his prior claim to have recordings and text messages regarding the lion cubs transferred from WIN. He also stated that he considered any medical records pertaining to these Big Cats to be privileged and claimed that the Office of Indiana Attorney General Curtis Hill forbade him from disclosing any information about the WIN Defendants.

24.     PETA noticed Mr. Lowe's remote deposition for May 27, 2020, at 9:00 a.m. CST. Mr. Lowe's deposition commenced as scheduled. Within minutes, Mr. Lowe refused to answer any questions based on purported instructions from the Indiana Attorney General. After PETA produced an email from the Office of Indiana Attorney General stating they never provided any such direction, Mr. Lowe complained "[t]hat is complete bullsh*t" and repeatedly threatened to end the deposition prematurely. For example: "I don't give a sh*t . . . I'm also the one who is in control as always. I will get up and leave. You can compel my testimony. They'll put sanctions on me, and I have no assets

deliberately so you'll never get anything from me." *See* Deposition Transcript of Mr. Lowe, attached as **Exhibit 5**, at 40:23-41:7.

25.   Some of the only information Mr. Lowe provided during his deposition concerned the involvement of his wife, Lauren. Mr. Lowe testified that Mrs. Lowe began caring for the lion cubs transferred from WIN as soon as Mr. Stark dropped them off at their doorstep. Ex. 5, at 22:23-24:2. Mr. Lowe also testified that, during his deposition, Mrs. Lowe reminded him that one lion cub died in Indiana before the rest of the cubs were transported to Oklahoma. Ex. 5, at 24:22-25:4. Mr. Lowe also testified that he keeps animal husbandry records sought by PETA in the Wynnewood home he shares with Mrs. Lowe. Ex. 5, at 38:24-39:1.

26.   Mr. Lowe hung up on his deposition minutes later, Ex. 5, at 50:1-19—after claiming that information about veterinary care administered to the lion cubs transferred from WIN was "[p]rotected by HIPAA," Ex. 5, at 28:1-11, and generally refusing to answer questions about the cubs' current circumstances. Mr. Lowe's deposition had been ongoing for less than an hour. Counsel for PETA then adjourned Mr. Lowe's deposition pending the resolution of a motion to compel his participation in discovery filed in the Southern District of Indiana. Ex. 5, at 50:22-51:11.

### Mrs. Lowe's Refusal to Comply with the Subpoenas

27.   As a last resort, PETA served a subpoena on Mrs. Lowe for copies of any records concerning the lion cubs transferred from WIN and any recordings she may have made of Mr. Stark on May 29, 2020. Ex. 1. PETA successfully served Mrs. Lowe on June 2, 2020. Ex. 2.

28.     Despite subsequently affirming service of the subpoena, Mrs. Lowe made no effort to produce the requested materials by the return date of June 11, 2020.

29.     PETA also subpoenaed Mrs. Lowe to appear at a remote deposition on June 15, 2020, at 9:00 a.m. CST. Ex. 1. The deposition subpoena required Mrs. Lowe to appear via internet-based video teleconferencing, or by telephone if internet service was not available. Ex. 1. Despite making no claim that internet service was unavailable, Mrs. Lowe refused to attend by any means other than by telephone. *See* Deposition Transcript of Lauren Lowe, at 4:8-24, attached as **Exhibit 6**.

30.     Mrs. Lowe explained during the deposition that she was recording the deposition herself as part of the production of a reality television show. Ex. 6, at 8:22-25.

31.     Mrs. Lowe was even more obstructive than her husband. After interrupting and arguing with an instruction to speak clearly for the benefit of the court reporter, Mrs. Lowe refused to answer basic questions, such as for what parts of her husband's deposition she was present, citing her rights as "a free American." Ex. 6, at 7:7. She invited PETA to compel her participation, as well as payment of PETA's costs and attorney's fees, because "[t]hat will save me two hours today," Ex. 6, at 7:19-20, and because PETA's counsel should have known "not to mess with a red head." Ex. 6, at 8:2-7.

32.     Mrs. Lowe asserted many of the same bad faith objections as her husband. For example, when asked about the lion cubs' medical history, Mrs. Lowe stated: "I cannot give you any type of health information because it's protected by HIPAA . . . So I'm not giving you any of the information because it is protected by HIPAA." Ex. 6, at 13:9-19.

After inviting PETA to "take it up with HIPAA," Mrs. Lowe asserted the same objection with regard to any information about the cubs' condition:

> **Q. Did the cubs need any medical attention after they arrived?**
> A. That is being protective by HIPAA.

Ex. 6, 13:20-14:5. Upon being told by counsel for PETA that "HIPAA does not cover the medical information of animals," Mrs. Lowe accused counsel for PETA of providing her unsolicited legal advice. Ex. 6, at 14:6-20.

33.     Mrs. Lowe refused to answer, without stating a basis for an objection, additional questions regarding the lion cubs. These included:

- The lion cubs' names, Ex. 6, at 23:11-23;

- Whether they are currently housed together, Ex. 6, at 29:10-12;

- The facility to which these cubs will be transferred after Mr. and Mrs. Lowe vacate the Greater Wynnewood Exotic Animal Park premises as ordered by the Western District of Oklahoma in *Big Cat Rescue Corp. v. Schreibvogel and Greater Wynnewood Development Group, LLC*, No. 5:16-cv-00155-SLP (W.D. Okla.), Ex. 6, at 25:7-28:8;

- The enclosures at the facility to which these cubs will be transferred, including approximate dimensions, inclusion or lack of lockout areas, fencing height, inclusion or lack thereof of shelter areas, Ex. 6, at 28:9-29:9; and

- Whether these cubs will be housed together at the facility to which they will be transferred, Ex. 6, at 29:13-17.

34. Despite confirming that she took recordings of Mr. Stark that she subsequently provided to federal prosecutors, Mrs. Lowe refused to produce this information to PETA or testify about the content of the recordings. *See, e.g.*, Ex. 6, at 18:12-18.

35. Mrs. Lowe did admit that she shared responsibility providing care to these cubs when they lived in her home before being used for exhibition. Ex. 6, at 14:21-23. As discussed above, she refused to provide meaningful testimony concerning this care.

36. Mrs. Lowe hung up on her deposition after approximately 40 minutes on the record. Ex. 6, at 34:15-35:25.

37. In addition to the questions Mrs. Lowe refused to answer, PETA had at least a few hours' worth of additional questions for Mrs. Lowe relevant to its litigation against her husband and the WIN Defendants. Such questions include published reports that these cubs' conditions are rapidly deteriorating, *see* J. Mitchell, *Tiger King Joe Exotic's former park now called 'zoo of horrors'*, Mississippi Center for Investigative Reporting (Jun. 11, 2020) (including photos, videos, and investigative reporting describing and showing the lion cubs as starved, neglected, and covered in flies, with one of the cubs missing a large chunk of her ear),[3] and that members of the public are allowed to approach Big Cats—who federal authorities have warned are susceptible to SARS-CoV-2—without taking any

---

[3] https://www.mississippicir.org/news/tiger-king-joe-exotics-former-park-now-called-zoo-of-horrors?fbclid=IwAR2Lh1X8tmT4Mjf7Ny0X8inxYUB3yqCpAco048dRKPzt Vha6DvYlozA0MiU (last viewed June 25, 2020).

precautions, instructed only not to "stick [their] arms in the cage." R. Clark, 'Big Brother': Cody Nickson and Jessica Graf Visit 'Tiger King' Zoo, Soap Dirt (May 9, 2020).[4]

**PETA's Entitlement to Relief**

38.  Rule 45(c) permits parties to command nonparties to attend depositions and produce documents, electronically stored information, or tangible things "within 100 miles of where the person resides, is employed, or regularly transacts business in person." PETA's subpoenas to Mrs. Lowe complied with Fed. R. Civ. P. 45 in all respects. Ex. 1. Under Rule 34(c), "a nonparty may be compelled to produce documents and tangible things or to permit an inspection."

39.  Mrs. Lowe did not serve any written objections on PETA. "A nonparty's failure to object in writing to a subpoena duces tecum within the time frame specified by Rule 45(d)(2)(B) . . . ordinarily constitutes a waiver of any objection to production of the designated documents." *Metro Mart, Inc. v. N. Star Mut. Ins. Co.*, No. CIV-14-1215-W, 2015 WL 13567095, at *2 (W.D. Okla. June 9, 2015) (citation omitted). Nor did she file a motion to quash or modify the subpoenas.

40.  While Mrs. Lowe is not a party to the Indiana Lawsuit, her "direct involvement in the underlying events and communications," *Mgmt. Comp. Grp. Lee, Inc. v. Okla. State Univ.*, No. CIV-11-967-D, 2011 WL 5326262, at *3 (W.D. Okla. Nov. 3, 2011), is undisputed. She and her husband have bragged about collecting and distributing surreptitious recordings of the events at issue. *See, e.g.*, Ex. 4. She was at the scene when

---

[4] https://soapdirt.com/big-brother-cody-nickson-jessica-graf-visit-tiger-king-zoo/ (last viewed June 25, 2020).

the lion cubs arrived at her doorstep, Ex. 6, at 10:20-11:8, and provided or facilitated much of the care that is a subject of the underlying litigation. *See, e.g.*, Ex. 6, at 14:21-23. There is no burden involved in producing records she and her husband are required to keep in their ordinary course of business and that they keep in their home. Ex. 5, at 38:24-39:1.

41. Instead, Mrs. Lowe has refused to participate in discovery out of nothing but an apparent willful desire to obstruct discovery and her disbelief that PETA would actually "[t]ake it up with the judge and let the judge hear what actually happened[.]" Ex. 6, at 31:18-24. This Court should require Mrs. Lowe to respond to discovery like any other nonparty witness in possession of relevant, non-privileged information subject to valid subpoenas.

## Conclusion and Prayer for Relief

For the reasons set forth above, PETA respectfully requests this Court to issue an Order directing Lauren Lowe to comply with a subpoena to produce documents and a subpoena to testify at a deposition in the matter pending in the United States District Court for the Southern District of Indiana, captioned *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc., et al.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind.). PETA also seeks its costs and reasonable attorney's fees in compelling compliance.

/s/ *Heather L. Hintz*
Heather L. Hintz, OBA No. 14253
Mark E. Hornbeek, OBA No. 33198
PHILLIPS MURRAH P.C.
Corporate Tower, 13th Floor
101 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
*hlhintz@phillipsmurrah.com*
*mehornbeek@phillipsmurrah.com*

and

Asher Smith *(pro hac vice pending)*
PETA FOUNDATION
1536 16th Street NW
Washington, DC 20036
Tel: (202) 483-7382
ashers@petaf.org

***Attorneys for Plaintiff, People for the Ethical Treatment of Animals, Inc.***